E. F. SPRAGUE v. THE ATCHISON, TOPEKA & SANTA
FE RAILWAY COMPANY *et al.*

**No. 13,843.** (78 Pac. 828.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury by Fire—Evidence.* Where there is no
question involved as to the emission of igniting sparks by a par-
ticular locomotive-engine, or that it would throw such sparks to
the place where a particular fire is alleged to have started, it is
not error for the court to refuse to permit the plaintiff to show
that other engines of the company had emitted igniting sparks
shortly before, and immediately after, the fire in question.

2. ———— *Combustible Material—Leasing Right of Way.* A rail-
road company is not absolved from the duty of keeping its right
of way clear and free from combustible material by leasing a
portion thereof to a private person, and it may be made to re-
spond in damages for fire started on the portion so leased by
reason of combustible material thereon.

Error from Lyon district court; DENNIS MADDEN
judge. Opinion filed December 1, 1904. Reversed.

STATEMENT.

THE plaintiff by this proceeding seeks to reverse the
orders, rulings and judgment made and rendered by
the court below against him in an action brought to
recover damages alleged to have been the result of a
fire set by defendant's employees while operating its
engines and conducting its business. Among the
many grounds of negligence alleged and relied upon
for a recovery are the following :

"Plaintiff alleges that on the 4th day of September,
1901, in said city of Emporia, county and state, said
defendant railway company, contrary to its duty in
that regard, by itself and its agents and servants,
carelessly and negligently failed to have and keep its
grounds and right of way in said city free and clear
from dry and combustible materials, and carelessly
and negligently permitted dry and combustible wooden

sheds and wooden buildings with wooden roofs to be and remain upon its said grounds and right of way close to its railroad-tracks, and where they were liable to and would be ignited by sparks and fire from its engines.

"That each and every of the engineer and engineers, the fireman and the firemen of the engine and engines of the defendant railway company which started said fire were, at and about the time of its starting, and for a long time prior thereto had been, habitually incompetent, inexperienced, unskilful, negligent and careless, of each and all of which said defendant railway company at all of said times had notice and knowledge ; that at the time when said fire was started said engineer and engineers, fireman and firemen, by reason of such incompetence, inexperience, unskilfulness, negligence, and carelessness, ran, operated and handled such engine and engines in an unskilful, incompetent, improper, negligent and careless manner, and by reason thereof said fire was started.

"And that none of the engines of said defendant railway company which was used and operated on said railroad at said place, at and about the time of the setting out and communicating of said fire, was supplied with suitable and safe spark-arresters and netting, in good order and safe condition ; but plaintiff is unable to allege more specifically the particular engines in question, or the details of the unsuitableness and lack of safe condition, design and order of said spark-arresters and netting.

"That at said time and place, in the operation by said defendant railway company of its said railroad, one or more of the engines used and operated by the defendant railway company, by itself and its agents and servants, set out and communicated fire ; that said fire was caused by the operation of said railroad and was set out and communicated by reason and as the result of each and every of the particular acts, conduct, omissions and defaults of and in the carelessness and negligence of said defendant railway company, and of its agents and servants, as hereinbefore stated ; that said fire ignited and burned the wooden sheds

and wooden buildings with wooden roofs hereinbefore referred to, upon the grounds and right of way of the defendant railway company, and spread and communicated continuously and forthwith to the said premises of the plaintiff, and his real and personal property situated thereon.''

*Buck & Spencer, W. A. Randolph, John H. Atwood,* and *John G. Egan,* for plaintiff in error.

*A. A. Hurd,* and *O. J. Wood,* for defendants in error.

The opinion of the court was delivered by

GREENE, J. : One of the principal questions in this case arises on plaintiff's exception to the ruling of the court excluding evidence offered by him to prove that other engines at other times, immediately before and after the fire in question, had emitted sparks and set fire to grass and other combustible material in the vicinity where the fire originated. This evidence was offered for the purpose of showing the origin of this fire. The plaintiff, in his opening statement to the court and jury, identified the particular engine that set the fire which caused the damage as No. 2319. There was no contention by the defendant that a loco motive-engine could not throw sparks over the distance between its tracks and the sheds where it is alleged that the fire started. In the absence of such question evidence that other engines driven at other times by other persons had thrown sparks which had ignited combustible material in the vicinity of the fire in question was not competent.

After a careful examination of the authorities cited by plaintiff in error in support of his contention, and a research of others, we have been unable to find support for his theory. We believe it may be said, with at least a reasonable degree of certainty, that such

authorities do not exist.   Language carelessly used by the courts, while discussing kindred questions, may be found, which, upon a cursory examination, might appear to sustain such principle, but a more critical investigation will disclose that this precise question was not involved or decided.   Where a particular engine is alleged to have set the fire, and the question is whether a locomotive-engine would throw igniting sparks, or would throw them the distance claimed, evidence that other engines of the defendant, similarly constructed, and under similar circumstances, had thrown igniting sparks that distance is properly admissible.   Where, however, the engine which set the fire cannot be identified, and the origin of the fire is unknown, evidence that other engines owned and operated by the defendant had, under similar circumstances, both before and after the fire in question, thrown igniting sparks which caused other fires is competent because of the difficulty of otherwise proving that the fire in question was started by sparks from a locomotive-engine of the defendant.   Such uncertainty and difficulty does not exist where the engine which is alleged to have thrown the igniting sparks is known.   In the present case the identity of the engine was known ; the negligence relied upon to support a recovery was that the particular engine was defectively constructed, not supplied with the latest and best approved spark-arrester, and that its operators were incompetent and negligent in its management. Under such circumstances evidence of the negligent and incompetent management of other engines at other times by other employees, or the defective construction or lack of proper spark-arresters or other appliances, would not assist in determining whether the identified engine was defective or lacking in any

of its parts, or whether it was negligently or incompetently managed.   Such evidence would tend to confuse, rather than to make plain, the fact in issue.

The following authorities show the position taken by the courts and commentators on this question, and we think they fully sustain our position.   In *Henderson v. Railroad Co.*, 144 Pa. St. 461, 22 Atl. 851, 16 L. R. A. 299, 27 Am. St. Rep. 652, it was said :

"When the fire is shown to have been caused, or, in the nature of the case could only have been caused, by sparks from an engine which is known and identified, the evidence should be confined to the condition, management and practical operation of that engine ; and testimony tending to prove defects in other engines of the company is irrelevant and inadmissible."

In *Gibbons v. The Wisconsin Valley Railroad Co.*, 58 Wis. 335, 17 N. W. 132, it was said :

"Where, in an action for the damage done by a fire alleged to have been set by a locomotive, there is no evidence that the fire was caused by any other than one of two particular locomotives, evidence as to other fires along the same line of road caused by locomotives other than those two, is inadmissible."

On page 340 it was also said :

"In cases where it is shown, either by positive or circumstantial evidence, that some locomotive of the company caused the fire, without the identification of any particular one, such evidence might have weight in showing the negligence of the company.   There may be cases which have gone further than this in the admission of such evidence, but they do not appear to us authority in reason."

To the same effect is the case of *First Nat. Bank v. L. E. & W. R. R. Co.*, 174 Ill. 36, 50 N. E. 1023, where it was said :

"Where the particular locomotive alleged to have caused the fire for which suit is brought against a

railroad company is identified, evidence of other fires set by different locomotives of the company, before and after the fire complained of, is not admissible."

In *Ireland v. Railroad Co.*, 79 Mich. 163, 44 N. W. 426, it was said :

"Where, in a suit against a railroad company for setting fire to plaintiff's factory by a defective engine, the particular engine is known and designated, it is not competent to show generally that the defendant's engines have caused fire at other times and places, but such particular engine may be shown to have done so, by means of escaping sparks, to show its defective construction."

In *Coale et al. v. Han. & St. Jo. R. R. Co.*, 60 Mo. 227, it was said :

"In suit against a railroad company for damage caused by the escape of sparks from a locomotive, testimony offered to prove the insufficiency of the engine or the negligence of the engineer by showing that fire had escaped from other locomotives of a similar pattern was rejected as collateral and incompetent."

In *Lesser Cotton Co. v. St. Louis, I. M. & S. Ry. Co.*, 114 Fed. 133, 52 C. C. A. 95, it was said :

"Where the engine which alone could have set the fire is identified, testimony that other engines of the defendant set fires or threw sparks at other times is incompetent in the absence of proof of similar condition and operation."

It may be suggested that at the time plaintiff offered to prove that other engines had thrown igniting sparks immediately before and after the damaging fire he had offered no evidence to show that such engines were constructed or equipped with spark-arresters similar to that on engine No. 2319. On the rebuttal, however, plaintiff introduced a deposition of Mr. Player, in which the witness testified that the

engines operated on the Emporia division prior to, and at the time of, the alleged fire were similar in their construction, and equipped with the same kind of spark-arresters, and steamed with the same kind of coal ; but no attempt was made thereafter to reintroduce this excluded evidence.  The reason given for the exclusion of such evidence was strongly stated by Judge Orton in *Gibbons v. The Wisconsin Valley Railroad Co., supra:*

"Such evidence would open the door for a wide issue of great importance—whether such other locomotives caused such fires or not—and could not affect the issue in the cause, even if it had been proved that other locomotives caused other fires in the vicinity. The rule has never been extended further than to allow proof of other fires caused by the same machinery.  If it had been proved in this case, beyond a doubt, that one of these locomotives—either that of the freight- or passenger-train passing soon or immediately before the fire occurred—caused the fire, it could not add to the defendant's liability by showing its habitual carelessness in respect to other locomotives ; and if it had been proved that other locomotives on the same road caused other fires, at other times and places, it would not be even presumptive evidence that the locomotives in question were insufficient in any respect, or that they caused this particular fire." (Page 337.)

In support of plaintiff's contention reliance is placed upon the cases of *Piggott v. Eastern Counties R. R. Co.,* 3 C. B. 229.  The exact reason for sustaining the lower court in admitting evidence of fire started by other engines was stated by Tindal, C. J., in the following language :

"I think it clearly was admissible for the purpose for which it was received, viz., to ascertain the possibility of fire being projected from the engine to such a distance from the railway as the building in question."   (Page 241.)

On page 242, Maule, J., said:

"The matter in issue was, whether or not the plaintiff's property had been destroyed by fire proceeding from the defendant's engine; and involved in that issue was the question whether or not the fire could have been so caused. The evidence was offered for the purpose of showing that it could; and for that purpose it was clearly material, and admissible."

It appears, therefore, that the question which we are discussing was not presented in that case.

In the case of *Smith v. Old Colony and Newport Railroad Company*, 10 R. I. 22, 27, the court did not place the admission of the evidence showing that other engines had set fire immediately before the one complained of upon the ground contended for by the plaintiff, but it was there said:

"We think there are two purposes for which such testimony may be admissible. The fact that other fires have been communicated before, and especially if recently before, the occurrence of the fire in question, is a fact which should put the company on their guard and stimulate them to increased watchfulness, and therefore testimony relating to such fire might properly pass to the jury, to enable the jury to judge whether, in view of their previous occurrence, the company was, at the time of the fire in question, in the exercise of reasonable care. For this purpose, however, no testimony should pass to the jury relating to fires subsequent to the fire in question. . . . A second purpose for which such testimony might be admissible is this, namely: To show the possibility of communicating fire by sparks from a locomotive, if any question were made upon that point, and, for this purpose, it would be immaterial whether the testimony related to fires of an earlier or later date than the fire in question."

Counsel also cites section 2372, volume 2, Thompson's Commentaries on the Law of Negligence, which

states the doctrine that for the purpose of showing
that it was possible for sparks from an engine to be
carried to the distance between the track and the
property it is alleged to have ignited, where such
question is a material one, such evidence is admissi-
ble.    This author, however, in section 2371, states
the rule thus :

"That, in actions for damages caused by the negli-
gent escape of fire from locomotive-engines, it is com-
petent for the plaintiff to show that, about the time
when the fire in question happened, the engines which
the company was running past the place of the fire
were so managed in respect of their furnaces as to be
likely to set on fire objects in the position of the prop-
erty burned ; or to show the emission of sparks or
ignited matter from other engines of the defendant
passing the spot upon other occasions, either before
or after the damage occurred, without showing that
they were under the charge of the same driver, or
were of the same construction, as the one causing the
damage.    But where the engine which scattered the
fire *is identified*, it is not competent to prove that *other*
engines of the same company also scattered fire."

In *Longabaugh v. The Virginia City and Truckee R. R.
Co.*, 9 Nev. 271, the engine that set the fire was not iden-
tified.    It was there held that under the facts of the
case such evidence was admissible.    The same was true
in *Dunning v. Me. Cent. R. R. Co.*, 91 Me. 87, 39 Atl.
352, 64 Am. St. Rep. 208, and in *Chicago, St. P. M. &
O. Ry. Co. v. Gilbert*, 52 Fed. 711, 3 C. C. A. 264.    In
the latter case, on page 713, the court said :

"We must not, in the consideration of this ques-
tion, lose sight of the issues involved.    In the case
at bar it was not admitted by the company that the
fire was caused by sparks escaping from a particular
engine, in which event the query would be as to the
condition of that particular engine and the mode in
which it was handled.    On the contrary, the parties

were at issue as to the origin of the fire, the plaintiffs claiming that it was due to fire escaping from some one of the engines of the company, and the defendant that it was due to fire escaping from the mill itself.''

It will be observed that in this case there was no identification of the engine. It was upon this ground that the court permitted the introduction of the evidence.

The case of *Texas & Pacific Ry. v. Watson*, 190 U. S. 287, 23 Sup. Ct. 681, 47 L. Ed. 1057, has no application whatever to our question. The evidence admitted in that case, over which the question arose, was of other fires set by the identified engine, which were discovered immediately after the particular engine had passed. There is no dispute among the authorities upon this question. It may always be shown that the identified engine set other fires immediately before or after the fire of which complaint is made.

The case of *G. Trunk R. R. Co. v. Richardson et al.*, 91 U. S. 454, 23 L. Ed. 356, is quoted by counsel as an authority, and it is also referred to by some cyclopedists as sustaining the contention of plaintiff in error. On page 470 we find the following statement:

''In this case it was proved that engines run by the defendant had crossed the bridge not long before it took fire. The particular engines were not identified; but their crossing raised at least some probability, in the absence of proof of any other known cause, that they caused the fire; and it seems to us, that, under the circumstances, this probability was strengthened by the fact that some engines of the same defendant, at other times during the same season, had scattered fire during their passage.''

It will be observed that the engine was not identified. Attention is also directed to *St. Jos. & D. C. Rld.*

*Co. v. Chase*, 11 Kan. 47. An examination of that case will disclose that the engine which it is alleged set out the fire was not identified.

Numerous errors are predicated on the ruling of the court in sustaining objections to questions put by plaintiff to his own witnesses, and also to questions put by plaintiff, on cross-examination, to the defendant's witnesses. We shall not undertake to refer specifically to each of such contentions, but only to those we think material. A. L. Favorite, the fireman on engine No. 2319 when the fire in question started, answered, over plaintiff's objection, that he considered himself a competent fireman. Before this question was asked the witness had given his experience as a railroad man. It was shown that he had not passed the necessary examination required of firemen, and that he was only a "handy" man. The jury were in full possession of all the facts and were qualified to answer the question. Favorite's answer, therefore, could not have been prejudicial. The same is true of the objection sustained to the question asked Goodhue, defendant's general foreman, as to Favorite's competency. It was of small consequence what Goodhue thought. The jury were in possession of all the facts concerning Favorite.

Another contention is that the court erred in excluding the evidence offered by plaintiff to prove that, about two years before the fire in question, some of the engines belonging to the defendant threw igniting sparks onto the roof of the shed where the damaging fire started. It is said that this evidence was offered to show that the sheds were combustible. We think that under the circumstances of this case this evidence was too remote. Whether they were combustible or not was a question susceptible of direct proof. Their ex-

act condition when the fire occurred was easily sus-
ceptible of direct proof, and from such evidence the
jury would have been able to determine the question.
This evidence would have opened a field of investiga-
tion wholly aside from the true controversy.   It would
have involved an examination of the conditions as they
existed at that time, and all the circumstances attend-
ing the alleged previous fire.

Complaint is also made of the refusal of the court
to give special instructions Nos. 9 and 10.   These in-
structions were based upon the evidence of previous
and subsequent fires started by other engines of the
defendant.   Since it has been determined that such
evidence was properly excluded, it follows that the
court did not err in refusing to give the instructions.
The principles announced in special instructions Nos.
26 and 27, requested by plaintiff, are sufficiently cov-
ered by other instructions given by the court.

A more serious question arises on the objection of
plaintiff to the giving of instruction No. 9½.   This in-
struction reads :

"You are instructed that if you find from the evi-
dence that the coal sheds in which the fire complained
of originated were located upon a lot belonging to the
defendant, but said lots were leased to other parties,
and the said parties erected the coal sheds and had
control thereof, the defendant would not be responsi-
ble for the bad or inflammable condition of such sheds,
but under such circumstances you can consider their
presence for what you think it is worth in determin-
ing whether or not defendant's servants on the engine
in question had notice or knowledge thereof, and ex-
ercised ordinary care in operating its engine in the
vicinity thereof."

One of the alleged grounds of negligence relied upon
for a recovery was that the defendant carelessly and
negligently failed to keep its grounds and right of

way free and clear from combustible material, and carelessly and negligently permitted dry and combustible wooden sheds and buildings with wooden roofs to be and remain upon its grounds and right of way close to its tracks, where they were liable to, and would, be ignited by sparks from its engine. Evidence was introduced tending to prove that certain coal-sheds were upon the company's right of way and extending over and upon other lands belonging to the company, and that such sheds were combustible, and that the fire in question started in these sheds from sparks emitted by one of defendant's engines. By the rule thus stated, the mere fact that the company had leased a part of its right of way or other property adjacent thereto, owned and held by it for use in the operation of its road, to a private person would release the company from any liability for a fire started by sparks from an engine's coming in contact with combustible material placed or permitted to accumulate thereon by the lessee.

A railroad company cannot absolve itself from keeping its right of way and property adjacent thereto, held by it for use in the operation of its road, free and clear from combustible material, by leasing such property; nor can it plead such a lease as a defense in an action for damage by fire ignited by the falling of sparks from one of its engines into combustible material placed or permitted to collect and remain thereon by such lessee, if it would have been liable had the property remained in the actual possession of the company.

For this reason the judgment is reversed, and the cause remanded for further proceedings.

All the Justices concurring.