EMERSON CAREY, Doing Business as The Carey Coal
Company, *Appellee,* v. THE BEEBE CONCRETE COM-
PANY, a Copartnership, etc., *Appellant.*

No. 17,893.

SYLLABUS BY THE COURT.

1. EVIDENCE — *Issue — Usable Value of Engine — Actual Value.*
Upon an issue as to what the use of an article is reasonably
worth per day, where it does not appear that there is any
absolute standard by which such value may be determined
with definiteness and certainty, it is not error to admit evi-
dence of the value of the article itself, to be considered with
other circumstances in determining the value of its use.

2. ———— *Same.* In that situation it is not error to admit evi-
dence of the price at which the owner subsequently sold the
article.

Appeal from Reno district court. Opinion filed Jan-
uary 11, 1913. Affirmed.

*Carr W. Taylor,* of Topeka, and *George A. Neeley,* of
Hutchinson, for the appellant.

*Prigg & Williams,* of Hutchinson, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Carey Coal Company, an individual
doing business under that name, sued the Beebe Con-
crete Company, a copartnership, upon an account. There
was no controversy over this, but a trial was had upon
a cross-demand. The defendants had furnished for
the use of the plaintiff a second-hand steam engine.
They assert that this was done under an agreement
that they were to be paid a reasonable price for its
use, that it was used for 230 days, and that its use
was worth $5 a day. The plaintiff contends that the
agreement was that he was to have the use of the en-
gine in consideration of repairs he made upon it, that
it was not used for more than 90 days, and that its

use was not worth the amount named. The jury awarded the defendants $125 on the claim, thereby in effect finding that there was an agreement to pay what the use of the engine was reasonably worth, and that it was reasonably worth that amount. The defendants appeal on the ground that the allowance was too small. The only question presented is whether prejudicial error was committed in the admission of certain evidence introduced as having a bearing upon the value of the use of the engine.

The plaintiff was permitted, over the objection of the defendants, to ask a witness what the engine itself was worth. The question for the determination of the jury was of course what the use of the engine was worth—not the value of the engine itself. The trial court fully recognized this distinction, but allowed this inquiry explicitly upon the theory that the value of the thing itself was a circumstance that might be considered in determining the value of its use. We think under the facts of this case that view was correct. A situation may perhaps be imagined where upon an issue as to the usable value of an article, evidence of what the article itself was worth might have a tendency to mislead the jury. But here the article in question was a much used piece of machinery, more or less out of repair. It can not be presumed, and the evidence did not conclusively show, that it had a definite usable value that could be arrived at with reasonable certainty by the opinions of witnesses upon that precise matter. One witness for the defendant estimated the usable value at $10 a day; another at from $5 to $7. Witnesses for the plaintiff testified that one of the defendants had said that $3 a day would not be out of the way, and had sent in a bill on the basis of $2 a day. No exceptional conditions were shown such as to give peculiar value to the use of the engine at the time it was lent. Evidence of its general condition and state of repair was admitted without

objection, and was obviously competent. We think estimates of the value of the engine might be of some aid in arriving at a fair charge for its use.

There seems to be little direct authority upon the question. In *Alling v. Cook*, 49 Conn. 574, cited in 13 Encyc. of Ev. 597, a ruling was approved which excluded evidence of the value of a chattel, the issue being what the parties had agreed should be paid for its use. This is obviously a different question from that here presented, although there may be some analogy between them. In *Cohoon et al. v. Kineon*, 46 Ohio St. 590, 22 N. E. 722, the exclusion of evidence as to value of real estate was held not to be error, where the inquiry was as to its rental value. The court said:

"Proof of the value of the fee simple could hardly aid in ascertaining rental value. The converse of the proposition might be true; indeed would be. But it is matter of common observation that many tracts of real estate of great value have no actual rental value. The evidence would have been misleading, and was, we think, properly excluded."    (p. 591.)

In such a situation as that suggested, evidence of the value of the property might be prejudicial, but it would be going too far to say that evidence of the value of real estate could never be of aid in ascertaining what it ought to rent for. Where property is capable of immediate use for the ordinary purpose to which it is adapted, there will naturally be some relation between its value and the value of its use. And where the rule is applicable at all it ought to work both ways. True, proof of the value of a vacant city lot could not greatly aid in arriving at a fair charge for its use in raising vegetables; but on the other hand, neither would proof of its rental value for that purpose be of much help in determining its reasonable worth.

In *Standard Supply Co. v. Carter & Harris*, 81 S. C. 181, 62 S. E. 150, 19 L. R. A., n. s., 155, this language was used, which exhibits the theory upon which

evidence of full value may be deemed to affect, although not to control, the question of usable value:

"It is quite possible to arrive at the fair rental value of a cotton ginnery for a cotton season. . . . In making proof of the rental value of a ginnery which had been operated in past seasons, evidence may be offered not only of the *cost* and physical condition of the property, but of all the conditions which surround it, including its patronage, and success and hazards in the past, and any change for better or worse in such conditions. All of these, and perhaps other matters, would be inquired into by those contemplating the renting of the property; and they are therefore factors entering into the determination of the market rental value; but neither the past success, indicated by the profits, nor any other single factor, is to be taken as controlling. Evidence of all these factors, along with other competent evidence, is admitted in order to arrive at the fair rental value." (p. 187.)

The answer of the witness to the question objected to was, in substance, that the engine was worth nothing at all in the condition it was in before the plaintiff repaired it. This was little more than a general depreciation of the property—an exaggerated form of stating its bad condition. It could hardly be regarded as of enough importance to justify a reversal, even if its admission were held to be erroneous. But the same question as to the admissibility of evidence is raised by another objection. Complaint is made of a ruling requiring one of the defendants to state upon cross-examination the amount for which they subsequently sold the engine—$400. We think the testimony was competent, upon the ground that evidence of the value of the engine had some bearing upon what its use was worth, and that evidence of what it sold for had some bearing upon its value. The sale was made by the defendants; they were not denied an opportunity to show the circumstances under which it was made; there is nothing to suggest any unfairness. The price is therefore some evidence of value. (*Hard-*

*wick v. Can. Co.,* 113 Tenn. 657, 88 S. W. 797; *Harrow v. St. Paul & Duluth R. Co.,* 43 Minn. 71, 44 N. W. 881; *Watson and others v. The Milwaukee & Madison Ry. Co.,* 57 Wis. 332, 15 N. W. 468; *Railway Co. v. Searles,* 71 Miss. 744, 16 South. 255; *Parmenter v. Fitzpatrick,* 135 N. Y. 190, 31 N. E. 1032; 16 Cyc. 1143; 3 Elliott on Evidence, § 2319, note 113.)

The judgment is affirmed.